# Exhibit 2

# Definitional Section of Chapter 11 Plan

# DEFINITIONAL SECTION OF THE PLAN

The following terms, when used in the Plan or Disclosure Statement or any subsequent amendments or modifications thereof, shall have the meanings defined below:

1.1. "Ad Hoc Existing Bondholders' Committee" means the informal committee of certain holders of Existing Bonds that was formed prior to the Petition Date.

1.2. "Ad Hoc Committees" means, collectively, the Ad Hoc Existing Bondholders' Committee and the Ad Hoc Senior Secured Noteholders' Committee.  Any action or consent by the Ad Hoc Committees means an action or consent by a majority (in principal dollar amount as of the date of such consent or proposed action) of each of the Ad Hoc Existing Bondholders' Committee and Ad Hoc Senior Secured Noteholders' Committee.

1.3. "Ad Hoc Senior Secured Noteholders' Committee" means the informal committee of certain holders of Senior Secured Notes that was formed prior to the Petition Date.

1.4. "Administrative Expenses" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) or section 507(b) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, Professional Fee Claims and all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Expenses pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2) of the Bankruptcy Code.

1.5. "Affiliate" means "affiliate" as set forth in section 101(2) of the Bankruptcy Code.

1.6. "Allowed" means, with reference to any Administrative Expense, Claim or Interest, any Administrative Expense, Claim or Interest, or any portion thereof, (i) as to which no objection to allowance or request for estimation has been interposed on or before any date provided for herein or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (iii) that has been allowed by a Final Order, (iv) as to which the liability of the Debtor, and the amount thereof, are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (v) that is expressly allowed in the Plan or (vi) as set forth on the Debtor's books and records; provided that, as to any Claim or Interest that is expressly

allowed in the Plan (including without limitation the Class 2 (Senior Secured Note Claims) and Class 4 (Existing Bond Claims)), then the provisions of the Plan shall govern over the Debtor's books and records; provided, further, that all Administrative Expenses, Claims or Interests (other than those expressly allowed in the Plan) for which no proof of claim bar date has been established shall be treated for all purposes as if the Chapter 11 Case had not been commenced and, subject to the provisions of Article 11 hereof, the determination of whether any such Administrative Expense, Claim or Interest shall be allowed and/or the amount thereof determined, resolved or adjudicated, as the case may be, in the procedural manner in which such Administrative Expense, Claim or Interest would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced.

  1.7. "Assumption Order" means the Final Order, in form and substance reasonably satisfactory to counsel for Loral and counsel for the Ad Hoc Committees, assuming the Loral Settlement Agreements in the Chapter 11 Case.

  1.8. "Bankruptcy Code" means title 11, United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

  1.9. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

  1.10. "Bankruptcy Rules" means, collectively, (i) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075, title 28, United States Code, as applicable to the Chapter 11 Case, and the related Official Bankruptcy Forms, (ii) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case, and (iii) the Local Rules of the Bankruptcy Court, each as now in effect or hereafter amended (to the extent any such amendments apply to this Chapter 11 Case).

  1.11. "Benefit Plans" means all employee benefit plans, policies, and programs, if any, for which the Debtor has any liability by contract or law or maintained by the Debtor for employees of the Debtor or its Affiliates, including, without limitation, all savings plans, health plans, disability plans, life insurance plans, deferred compensation plans, retirement plans, severance plans, executive incentive plans, stock purchase plans, stock option plans and all other similar plans or programs, including, without limitation, social security and retirement plans that are required under Mexican law, whether or not managed directly by the Debtor or at the Debtor's request.

  1.12. "Business Day" means any day other than a Saturday, a Sunday or any other day on which commercial banking institutions in New York, New York are required or authorized to close by law or executive order.

  1.13. "Cash" means legal tender of the United States of America, unless otherwise noted and unless the agreement or course of business or conduct between the Debtor and a particular holder otherwise requires payment in a different currency.

1.14. "Chapter 11 Case" means the case commenced by the Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code on the Petition Date, styled In re Satélites Mexicanos, S.A. de C.V., Chapter 11 Case No. 06-[_____] (---).

1.15. "Claim" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtor or property of the Debtor, whether or not asserted.

1.16. "Class" means a category of holders of Claims or Interests as described in Article 4 herein.

1.17. "COFECO" means the Mexican *Comisión Federal de Competencia* (Federal Competition Commission).

1.18. "Collateral" means all right, title and interest of the Debtor and each of its subsidiaries and any other Person that has or may from time to time guarantee any of the First Priority Senior Secured Notes or the Second Priority Senior Secured Notes in any assets or Property, including but not limited to all assets and Property of whatever nature, whether real, personal or mixed, tangible or intangible, now owned or existing or hereafter acquired or arising, and all products and proceeds of the foregoing.

1.19. "Collateral Documents" means the First Priority Collateral Trust Agreement, the Second Priority Collateral Trust Agreement, the First Priority Mortgage and the Second Priority Mortgage and any other document or instrument executed and delivered by the Debtor or its subsidiaries or any other Person that may guarantee any of the First Priority Senior Secured Notes or the Second Priority Senior Secured Notes, granting or purporting to grant a Lien or other interest on any of their respective right, title, or interest in or to any Collateral to secure payment of the New Notes.

1.20. "Committee" means the official statutory committee or committees, if any, appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as such committee or committees may be reconstituted from time to time.

1.21. "Concession" means any and all of the concessions granted by Mexico to the Debtor or any of its subsidiaries, as the same may be amended, supplemented, reinstated, renewed, or replaced from time to time, including without limitation all orbital concessions and all property concessions and all amendments, supplements, reinstatements, renewals, and replacements thereof.

1.22. "Concurso Plan" means the Concurso Agreement (*Convenio Concursal*), dated as of May 29, 2006, and approved on July 14, 2006 by the Mexican Bankruptcy Court in the Debtor's Concurso Proceeding, pursuant to an order (*sentencia de aprobacion del Convenio Concursal*) that became final and non-appealable on July 31, 2006.

1.23. "Concurso Proceeding" means the Debtor's former Mexican reorganization, known as a *concurso mercantil* that was pending before the Mexican

Bankruptcy Court under file number 129/2005, which terminated on July 14, 2006, and became final and nonappealable on July 31, 2006.

    1.24.   "Confirmation" means the Bankruptcy Court's confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

    1.25.   "Confirmation Date" means the date on which the Confirmation Order is entered by the clerk of the Bankruptcy Court on the docket for the Chapter 11 Case.

    1.26.   "Confirmation Hearing" means the hearing held pursuant to the Bankruptcy Code and the Bankruptcy Rules including any adjournments or continuances thereof, at which the Bankruptcy Court considers Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

    1.27.   "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which Order shall be in form and substance reasonably satisfactory to the Debtor and counsel to the Ad Hoc Committees.

    1.28.   "Corporate Documents" means, as applicable, the New By-Laws and any other applicable organizational documents of the Reorganized Debtor, in all cases as may be amended from time to time.

    1.29.   "Debt" means "debt," as defined in section 101(12) of the Bankruptcy Code.

    1.30.   "Debtor" means Satélites Mexicanos, S.A. de C.V., a Mexican variable capital stock company, including in its capacity as Debtor in Possession.

    1.31.   "Debtor In Possession" means the Debtor when acting in the capacity of trustee and/or as debtor in possession in the Chapter 11 Case pursuant to sections 1101(a), 1107(a) and 1108 of the Bankruptcy Code.

    1.32.   "Disallowed" means, with respect to any Claim, Administrative Expense or Interest against or in the Debtor, any Claim, Administrative Expense or Interest or any portion thereof that has been disallowed by a Final Order, or which has been withdrawn, in whole or in part, by the holder thereof.

    1.33.   "Disbursing Agent" means the Reorganized Debtor and/or one or more parties designated by the Debtor or the Reorganized Debtor (as applicable), in its sole discretion, or as ordered by the Bankruptcy Court, to serve as a disbursing agent under the Plan and make all distributions pursuant to the Plan.

    1.34.   "Disclosure Statement" means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and the Bankruptcy Rules, as such disclosure statement may be

amended, modified or supplemented (including all appendices, exhibits and schedules thereto).

  1.35. "Disclosure Statement Order" means the Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

  1.36. "Disputed" means, with reference to any Administrative Expense, Claim or Interest, any such Administrative Expense, Claim or Interest (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code or (b) for which a proof of claim or interest or (in the case of an Administrative Expense) a motion for payment has been timely filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

  1.37. "Effective Date" means the earlier to occur of (a) the first Business Day on which (i) all conditions to the effectiveness of the Plan as set forth in Article 12 hereof have been satisfied or, if capable of being waived, duly and expressly waived as provided in Article 12 hereof and (ii) the effectiveness of the Confirmation Order shall not be stayed and (b) such other date following the Confirmation Date that the Debtor, with the consent of counsel for the Ad Hoc Committees, designates; *provided*, that if the proposed Effective Date is more than 5 (five) months after the Confirmation Date, counsel for Loral must consent to such date.

  1.38. "Effective Date Legal Opinions" means the legal opinion of the Debtor's U.S. counsel that the Confirmation Order has been entered and no notice of appeal or motion for reconsideration has been Filed, and the legal opinions of the Debtor's Mexican counsel listed on Schedule 1 hereto.

  1.39. "Enlaces" means Enlaces Integra, S. de R.L. de C.V.

  1.40. "Enlaces Documents" means (i) those documents that effectuate the capitalization of the claims due from Enlaces to the Debtor in return for seventy-five percent (75%) of the fully diluted equity of Enlaces, (ii) those documents that amend the by-laws for Enlaces, all of which shall be substantially in the form set forth in the Plan Supplement, and (iii) those agreements between Enlaces and Globalstar de Mexico S. de R.L. de C.V. or its designee.

  1.41. "Equity Trust" means the trust to be established pursuant to the Equity Trust Agreement in regard to the New Common Stock with the Equity Trust Trustee.

  1.42. "Equity Trust Agreement" means the trust agreement governing the Equity Trust, to be executed on the Effective Date, which agreement shall be substantially in the form included in the Plan Supplement.

1.43. "Equity Trust Trustee" means Nacional Financiera, S.N.C., Institucion de Banca de Desarrollo, or another Mexican bank designated by the Debtor and approved by the Ad Hoc Bondholders' Committee.

1.44. "Estate" means the estate of the Debtor in the Chapter 11 Case as created pursuant to section 541 of the Bankruptcy Code.

1.45. "Existing Bonds" means the 10-⅛% Unsecured Senior Notes due November 1, 2004, issued by the Debtor pursuant to the Existing Bond Indenture, in the aggregate principal amount as of the Petition Date of $320,000,000.

1.46. "Existing Bond Claims" means all Claims, rights and interests arising out of or related to (i) the Existing Bonds, the Existing Bond Indenture, and any Instruments, documents or agreements executed in connection therewith, including, without limitation, all accrued but unpaid interest thereon and (ii) the purchase or sale of the Existing Bonds, including, without limitation, any and all Claims (x) for fraud, misrepresentation, rescission, reimbursement, contribution or damages, (y) for damages arising from the rescission of the purchase or sale of the Existing Bonds or (z) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of a Claim described in clause (x) and (y) above, which Claims are subordinated pursuant to sections 510(b) and (c) of the Bankruptcy Code.

1.47. "Existing Bond Indenture" means the Indenture, dated as of February 2, 1998, as supplemented by a Supplemental Indenture, dated as of November 25, 2002, and as may have been amended, modified or supplemented from time to time, between the Debtor, as issuer, and the Existing Bond Trustee, as trustee, with regard to the Existing Bonds.

1.48. "Existing Bond Trustee" means The Bank of New York or any duly appointed successor trustee, solely in its capacity as indenture trustee under the Existing Bond Indenture.

1.49. "Existing Common Stock" means the shares of common stock (Series "A" or "B") and neutral investment stock (Series "N") of the Debtor issued and outstanding as of the Petition Date.

1.50. "Existing Common Stock Interest" means any rights or interests with respect to, on account of or arising from any equity or similar interests in the Debtor represented by the Existing Common Stock, including without limitation any and all Claims (i) for damages arising from the rescission of the purchase or sale of the Existing Common Stock or (ii) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, which Claims are subordinated pursuant to sections 510(b) and (c) of the Bankruptcy Code.

1.51. "Existing Preferred Stock" means the convertible preferred, nominative non-par value stock (Series C, SubSeries C-1) of the Debtor issued and outstanding as of the Petition Date.

        1.52.    "Existing Preferred Stock Interest" means any rights or interests with respect to, on account of or arising from any equity or similar interests in the Debtor represented by the Existing Preferred Stock, including without limitation any and all Claims (i) for damages arising from the rescission of the purchase or sale of the Existing Preferred Stock or (ii) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, which Claims are subordinated pursuant to section 510(b) and (c) of the Bankruptcy Code.

        1.53.    "File" or "Filed" means as to any document or instrument, submitted to be filed with the Clerk of the Bankruptcy Court or clerk of any other court of competent jurisdiction with respect to a particular matter, as applicable, and actually accepted by such clerk and entered on the docket or other relevant record of the applicable matter.

        1.54.    "Final Order" means an Order or judgment of the Bankruptcy Court as to which the time to appeal, petition for *certiorari* or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for reargument or rehearing shall then be pending; and if an appeal, writ of *certiorari*, reargument or rehearing thereof has been sought, such Order shall have been affirmed by the highest court to which such Order was appealed, or *certiorari* shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such Order, and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such Order, shall not cause such Order not to be a Final Order.

        1.55.    "Firmamento" means Firmamento Mexicano, S. de R.L. de C.V., a Mexican limited liability company with variable capital.

        1.56.    "First Priority Collateral Trust Agreement" means the First Priority Collateral Trust Agreement, to be dated on or before the Effective Date, among the Debtor or the Reorganized Debtor, as applicable, and each of the guarantors party thereto, [_____], as Collateral Trustee, and [_____] as Indenture Trustee, substantially in the form set forth in the Plan Supplement.

        1.57.    "First Priority Lien" means the valid and enforceable first-priority Lien on the Collateral securing the obligations in respect of the First Priority Senior Secured Notes and under the First Priority Senior Secured Note Indenture and First Priority Collateral Trust Agreement.

        1.58.    "First Priority Mortgage" means that certain amended and restated Mexican statutory telecommunications mortgage, to be dated on or before the Effective Date, made by the Debtor in favor of, or for the benefit of, the collateral trustee under the First Priority Collateral Trust Agreement, as the same may be amended, supplemented or

otherwise modified from time to time, substantially in the form set forth in the Plan Supplement.

    1.59. "First Priority Senior Secured Notes" means the floating rate first priority senior secured notes due 2011, to be issued by the Debtor on the Effective Date pursuant to the First Priority Senior Secured Note Indenture, in the aggregate principal amount of $234,400,000, secured by the First Priority Lien, and having the principal terms and conditions set forth in the applicable documents in the Plan Supplement, as described in the Disclosure Statement; provided that in the event the Effective Date is other than September 30, 2006, the aggregate principal amount of the First Priority Senior Secured Notes to be issued by the Debtor on the Effective Date pursuant to the Plan shall be adjusted upward for each day after September 30, 2006, or downward for each day before September 30, 2006, as applicable, that the Effective Date occurs, by the following amount: $234,400,000 multiplied by the Per Diem Rate multiplied by the number of days before or after September 30, 2006, that the Effective Date occurs.

    1.60. "First Priority Senior Secured Note Indenture" means that certain indenture trust agreement governing the First Priority Senior Secured Notes to be entered into between the Reorganized Debtor and the First Priority Senior Secured Note Trustee and the guarantors party thereto on or before the Effective Date upon substantially the terms and conditions described in the Disclosure Statement and in substantially the form set forth in the Plan Supplement.

    1.61. "First Priority Senior Secured Note Trustee" means the indenture trustee, solely in its capacity as indenture trustee for the First Priority Senior Secured Notes under the First Priority Senior Secured Note Indenture, as selected by the Debtor in consultation with the Ad Hoc Senior Secured Noteholders' Committee.

    1.62. "General Unsecured Claim" means any Claim against the Debtor that is not (i) included in Class 1 (Priority Non-Tax Claims), Class 2 (Senior Secured Note Claims), Class 3 (Other Secured Claims) or Class 4 (Existing Bond Claims), (ii) an Administrative Expense or (iii) a Priority Tax Claim.

    1.63. "Government Approvals" means (a) the approval by the SCT of the issuance of the New Common Stock to the SPE; (b) the approval by the SCT of the New By-Laws; (c) the approval by the *Comisión Nacional de Inversiones Extranjeras* (Foreign Investment Commission) to issue the New Series N Common Stock; (d) approval by COFECO of the "concentration" resulting from the Plan; and (e) approval by the SCT of the new by-laws and new stock of Enlaces.

    1.64. "Impaired" means, when used with reference to a Claim or Interest (or Class of Claims or Interests), a Claim or Interest (or Class of Claims or Interests) that is impaired within the meaning of section 1124 of the Bankruptcy Code.

    1.65. "Instrument" means any mortgage (including any mortgage as defined in section 9-102(a)(55) of the Uniform Commercial Code in effect in the State of New York on the Petition Date), share of stock, security, promissory note, bond, or any

other "Instrument," as that term is defined in section 9-102(a)(47) of the Uniform Commercial Code in effect in the State of New York on the Petition Date.

  1.66. "Intercreditor Agreement" means the Intercreditor Agreement to be dated on or before the Effective Date, among the Debtor, the First Priority Senior Secured Note Trustee, the collateral trustee under the First Priority Collateral Trust Agreement, the Second Priority Senior Secured Note Trustee, and the collateral trustee under the Second Priority Collateral Trust Agreement, substantially in the form set forth in the Plan Supplement.

  1.67. "Interest" means the interest of any holder of an "equity security" (as defined in section 101(16) of the Bankruptcy Code) represented by any issued and outstanding shares of Existing Common Stock or Existing Preferred Stock or other instrument evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant or right, contractual or otherwise, to acquire any such interest and any redemption, conversion, exchange, voting, participation and dividend rights and liquidation preferences relating to any such equity securities.  When used herein, "Interest" shall include any and all Claims (i) for damages arising from the rescission of the purchase or sale of Interests or (ii) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, which Claims are subordinated pursuant to section 510(b) and (c) of the Bankruptcy Code.

  1.68. "LIBOR" means the London Inter Bank Offering Rate.

  1.69. "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code and includes, without limitation, any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge, or other security interest or any preference, priority, or other security agreement or preferential arrangement of any kind or nature whatsoever.

  1.70. "Loral" means LSC and/or Loral SatMex Ltd., as applicable.

  1.71. "Loral Parties" means, collectively, Loral, Loral Space & Communications Ltd., Loral Space & Communications Holdings Corporation (f/k/a Loral Space & Communications Corporation), Loral Skynet Network Services, Inc., Loral SpaceCom Corporation, Loral Skynet, a division of Loral SpaceCom Corporation, Loral Space & Communications Inc. and SS/L.

  1.72. "Loral Settlement Agreements" means, collectively, each as may be amended (i) that certain Settlement Agreement (the "Settlement Agreement") dated June 14, 2005, by and among the Debtor, Loral Space & Communications Corporation (n/k/a Loral Space & Communications Holdings Corporation), Loral SpaceCom Corporation, Loral Skynet, a division of Loral SpaceCom Corporation, Loral Skynet Network Services, Inc. and SS/L, (ii) the New Agreements (as defined in the Settlement Agreement) and (iii) the Active Capacity Agreements (as defined in the Settlement Agreement).

1.73. "LSC" means Loral Skynet Corporation, a corporation organized under the laws of Delaware.

1.74. "Loral Transponders" means those transponders that are the subject of (i) that certain Agreement Concerning the Lease of Transponders, dated June 14, 2005, between the Company and LSC (as assignee of Loral Skynet, a division of Loral SpaceCom Corporation), as amended and (ii) that certain Agreement Concerning the Lease of Transponders, dated June 14, 2005, between the Company and SS/L (as assignee of Loral Space & Communications Holdings Corporation), as amended.

1.75. "Loral Usufructo" means the right in *rem* defined as a *usufructo* under Articles 980 *et seq.* of the Federal Civil Code (*Codigo Civil Federal*) of Mexico to be irrevocably granted by the Reorganized Debtor as of the Effective Date, pursuant to the Loral Usufructo Documents, to certain Affiliates of Loral (as designated by Loral) with respect to the Loral Transponders as described in the Loral Usufructo Documents, which Loral Usufructo shall be registered at the commercial file with the Public Registry of Commerce of the Debtor or the Reorganized Debtor, as the case may be.

1.76. "Loral Usufructo Documents" means those documents setting forth the terms of the Loral Usufructo, as set forth in Section VII.A.3 of the Disclosure Statement, and substantially in the forms set forth in the Plan Supplement.

1.77. "Menoscabo" means that certain promissory note issued by Servicios for the benefit of the Mexican Government.

1.78. "Mexican Bankruptcy Court" means the Second Federal District Court for Civil Matters in the Federal District of Mexico.

1.79. "Mexican Government" means the federal government of Mexico (i.e., the executive branch and any agency thereof).

1.80. "Mexican Reorganization Law" means the *Ley de Concursos Mercantiles* of Mexico, published in the Official Gazette of the Federation (*Diario Oficial de la Federación)* on May 12, 2000, as now in effect or hereafter amended (to the extent any such amendments apply during this Chapter 11 Case).

1.81. "Mexico" means the United Mexican States.

1.82. "New By-Laws" means the *estatutos sociales,* or by-laws, for the Reorganized Debtor, as amended and restated pursuant to the Plan, substantially in the form set forth in the Plan Supplement.

1.83. "New Common Stock" means, collectively, the New Series A Common Stock, New Series B Common Stock and New Series N Common Stock.

1.84. "New Debt Documents" means the First Priority Senior Secured Note Indenture, the Second Priority Senior Secured Note Indenture, the Intercreditor

Agreement, the Bondholder Registration Rights Agreement, the Collateral Documents, and any other Instruments, documents or agreement executed in connection therewith.

    1.85. "New Equity Documents" means the Equity Trust Agreement, the New By-Laws, the Shareholders' Resolutions and the SPE Registration Rights Agreement.

    1.86. "New Notes" means, collectively, the First Priority Senior Secured Note and the Second Priority Senior Secured Notes.

    1.87. "New Series A Common Stock" means the shares of Series A Common Stock to be issued by the Reorganized Debtor on the Effective Date.

    1.88. "New Series B Common Stock" means the shares of Series B Common Stock to be issued by the Reorganized Debtor on the Effective Date.

    1.89. "New Series N Common Stock" means the neutral investment shares of Series N Common Stock to be issued by the Reorganized Debtor on the Effective Date.

    1.90. "Order" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as entered on such court's docket.

    1.91. "Other Secured Claim" means a Claim, other than a Senior Secured Note Claim (Class 2), that is secured by a Lien upon Property, or the proceeds of the sale of such Property, in which the Debtor has an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of such Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor (or the Reorganized Debtor, as the case may be) and the holder of such Claim.

    1.92. "Per Diem Rate" means a percentage equal to the one-month LIBOR rate as of the date that is three (3) business days prior to the Effective Date plus four hundred and fifty basis points (LIBOR+4.5%) divided by three hundred sixty (360).

    1.93. "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

    1.94. "Petition Date" means August 11, 2006, the date on which the Debtor Filed its voluntary petition commencing the Chapter 11 Case.

    1.95. "Plan" means this chapter 11 plan of reorganization, as it may be amended, modified, or supplemented from time to time, and all exhibits annexed hereto or referenced herein, including any Plan Supplement.

    1.96. "Plan Documents" means the documents prepared, executed and Filed with the Bankruptcy Court or distributed in connection with the Plan, including without limitation the Plan, the Disclosure Statement, all Plan Supplements Filed with the

Bankruptcy Court, all annexes, schedules and exhibits to the Disclosure Statement and any other documents prepared, executed and Filed with the Bankruptcy Court or distributed in connection with the Plan or the Disclosure Statement.

1.97. "Plan Supplement" means the supplement to the Plan containing certain documents relevant to the implementation of the Plan, including, but not limited to, the list of the initial members of the board of directors of the Reorganized Debtor, the list of the initial officers of the Reorganized Debtor, forms of the New Common Stock, the New By-Laws, the First Priority Senior Secured Note Indenture, the Second Priority Senior Secured Note Indenture, the ROFO Agreement, the Loral Usufructo Documents, the Equity Trust Agreement, the Enlaces Documents, the Registration Rights Agreements, the Collateral Documents, the Shareholders' Resolutions, the Intercreditor Agreement, the SPE Documents and a list of any executory contracts and unexpired leases to be rejected pursuant to the Plan. The Plan Supplement and the documents contained therein shall be Filed no later than ten (10) Business Days before the Voting Deadline, provided that the documents included therein may thereafter be amended and supplemented prior to execution as provided herein and therein.

1.98. "Postpetition Interest" means interest accruing after the Petition Date on a Claim.

1.99. "Priority Non-Tax Claim" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Expense.

1.100. "Priority Tax Claim" means a Claim of a governmental unit that is entitled to priority under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.101. "Principia" means, Principia, S.A. de C.V., a Mexican variable capital stock company.

1.102. "Professional Fee Claims" means the Administrative Expenses of Professional Persons for compensation or reimbursement of costs and expenses relating to services performed after the Petition Date through and including the Effective Date.

1.103. "Professional Person" means a professional person, as that term is used in sections 327, 328, 330, 331, 503(b)(2) and/or 1103 of the Bankruptcy Code, who is retained, pursuant to a Final Order of the Bankruptcy Court, by the Debtor or the Committee (if any) directly in connection with the Chapter 11 Case.

1.104. "Property" means any right or interest in or to property of any kind whatsoever, whether real, personal, or mixed, and whether tangible or intangible, including, without limitation, capital stock, rights to and in the Concessions and the orbital slots subject thereto, and regulatory, governmental and all other rights and assets under the laws of Mexico, the United States of America, and otherwise.

1.105. "Ratable Proportion" means, with reference to any distribution on account of the holders of the Senior Secured Note Claims and the Existing Bond Claims,

a distribution equal in amount to the ratio (expressed as a percentage) (X) with respect to a Senior Secured Note Claim, that a holder's principal amount of Senior Secured Notes bears to the aggregate principal amount of all Senior Secured Notes and (Y) with respect to an Existing Bond Claim, that a holder's principal amount of Existing Bonds bears to the aggregate principal amount of all Existing Bonds.

   1.106.  "Record Date" means the record date established for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the [day the Disclosure Statement Order is entered by the Court] or such other date as may be established by the Bankruptcy Court in the Disclosure Statement Order.

   1.107.  "Recognition Judgment" means the final judgment of the Mexican Bankruptcy Court dated December 30, 2005, recognizing claims against the Debtor in the Concurso Proceeding as of September 8, 2005.

   1.108.  "Registration Rights Agreements" means the registration rights agreements that shall be executed by the Reorganized Debtor (and the SPE, as applicable), for the benefit of certain recipients of (i) the SPE Interests, (ii) the Second Priority Senior Secured Notes and (iii), to the extent of piggyback rights, the First Priority Senior Secured Notes on the Effective Date, substantially in the form set forth in the Plan Supplement.

   1.109.  "Reorganized Debtor" means the Debtor as revested with the property of the Estate on and after the Effective Date.

   1.110.  "Responsible Person" means Thomas Heather.

   1.111.  "Restructuring Agreement" means that certain Restructuring Agreement, as amended, by and among the Debtor, Servicios, Loral, Principia, certain holders of the Existing Bonds and certain holders of the Senior Secured Notes, or their successors or assigns, dated as of March 31, 2006, as amended.

   1.112.  "ROFO Agreement" means the letter agreement between the Debtor and SS/L granting SS/L a right of first offer with respect to the construction of the Debtor's next satellite to be placed into one of the Debtor's existing orbital locations or any orbital location obtained in exchange for any of the Debtor's existing orbital locations as described in Section VII.A.2 of the Disclosure Statement, and substantially in the form set forth in the Plan Supplement.

   1.113.  "SCT" means the Mexican *Secretaría de Comunicaciones y Transportes* (the Ministry of Communications and Transportation).

   1.114.  "Second Priority Collateral Trust Agreement" means the Second Priority Collateral Trust Agreement, to be dated on or before the Effective Date, among the Debtor and each of the Second Priority Guarantors thereto, [_____], as Collateral Trustee, and [_____] as Indenture Trustee, substantially in the form set forth in the Plan Supplement.

1.115. "Second Priority Lien" means the valid and enforceable second-priority Lien on the Collateral securing the obligations in respect of the Second Priority Senior Secured Notes and under the Second Priority Senior Secured Note Indenture and Second Priority Collateral Trust Agreement.

1.116. "Second Priority Mortgage" means that certain second-priority statutory telecommunications mortgage, to be dated on or before the Effective Date, made by the Debtor in favor of, or for the benefit of, the collateral trustee under the Second Priority Collateral Trust Agreement, substantially in the form set forth in the Plan Supplement.

1.117. "Second Priority Senior Secured Notes" means the 10.125% fixed rate second priority senior secured notes due 2013, to be issued in accordance with the Second Priority Senior Secured Note Indenture by the Reorganized Debtor on the Effective Date, secured by the Second Priority Lien, for an aggregate original principal amount of one hundred forty million dollars ($140,000,000), and having the principal terms and conditions set forth in the applicable documents in the Plan Supplement, as described in the Disclosure Statement.

1.118. "Second Priority Senior Secured Note Indenture" means that certain indenture trust agreement governing the Second Priority Senior Secured Notes to be entered into between the Reorganized Debtor and the Second Priority Senior Secured Note Trustee and the guarantors party thereto on the Effective Date, and having the principal terms and conditions set forth in the applicable documents in the Plan Supplement, as described in the Disclosure Statement.

1.119. "Second Priority Senior Secured Note Trustee" means the indenture trustee, solely in its capacity as indenture trustee and collateral trustee under the Second Priority Senior Secured Note Indenture, as selected by the Debtor in consultation with the Ad Hoc Existing Bondholders' Committee.

1.120. "Senior Secured Collateral Trust Agreement" means the Intercreditor and Collateral Trust Agreement dated as of February 23, 1998, among Firmamento, Servicios, the Debtor, and Citibank, N.A., as Administrative Agent, Indenture Trustee and Collateral Trustee.

1.121. "Senior Secured Notes" means the Senior Secured Floating Rate Notes due June 30, 2004 issued by the Debtor pursuant to the Senior Secured Note Indenture, which as of the Petition Date, had an aggregate principal balance of $203,388,000.00.

1.122. "Senior Secured Note Claims" means all Claims, rights and interests arising out of or related to (i) the Senior Secured Notes, the Senior Secured Note Indenture, the Senior Secured Collateral Trust Agreement and any Instruments (including without limitation any and all telecommunications mortgages made by the Debtor in favor of or for the benefit of the collateral trustee under the Senior Secured Collateral Trust Agreement), documents or agreements executed in connection therewith, including,

without limitation, all accrued but unpaid interest thereon and (ii) the purchase or sale of the Senior Secured Notes, including, without limitation, any and all Claims (x) for fraud, misrepresentation, rescission, reimbursement, contribution or damages, (y) for damages arising from the rescission of the purchase or sale of the Senior Secured Notes or (z) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of a Claim described in clause (x) and (y) above, which Claims are subordinated pursuant to sections 510(b) and (c) of the Bankruptcy Code.

1.123.  "Senior Secured Note Indenture" means the Indenture, dated as of March 4, 1998, as supplemented by a First Supplemental Indenture, dated as of June 30, 1998, as supplemented by a Second Supplemental Indenture, dated as of February 16, 2000, as supplemented by a Third Supplemental Indenture, dated as of March 18, 2003, as has been amended, modified or supplemented from time to time, between the Debtor, as issuer, and the Senior Secured Note Trustee, solely in its capacity as indenture trustee, with regard to the Senior Secured Notes.

1.124.  "Senior Secured Note Trustee" means Citibank, N.A. or any duly appointed successor trustee, in its capacity as indenture trustee and/or collateral trustee, as applicable, under the Senior Secured Note Indenture.

1.125.  "Servicios" means Servicios Corporativos Satelitales, S.A. de C.V., a Mexican variable capital stock company.

1.126.  "Shareholders' Resolutions" means the resolutions of the holders of the Existing Common Stock and the Existing Preferred Stock to take the actions necessary to implement the Plan, substantially in the forms set forth in the Plan Supplement.

1.127.  "SPE" means one or more special purpose entities or trusts that will own beneficial interests in the Equity Trust corresponding to certain shares of the New Common Stock to be held by the Equity Trust Trustee.

1.128.  "SPE Documents" means the bylaws, partnership agreement or other governing document of the SPE.

1.129.  "SPE Interests" means the interests or other evidences of ownership of the SPE to be issued to the holders of the Allowed Existing Bond Claims on the Effective Date.

1.130.  "SS/L" means Space Systems/Loral Inc., a corporation organized under the laws of the State of Delaware.

1.131.  "Technical Committee" means the three (3) person committee established under the Equity Trust Agreement to effectuate the sale of the New Common Stock held by the Equity Trust Trustee.

      1.132.  "Thomas Heather" means Thomas Stanley Heather Rodriguez, the court appointed *conciliador* in the Concurso Proceeding and the Responsible Person appointed to assist the Debtor pursuant to Section 7.3(d) of the Plan.

      1.133.  "Unimpaired" means a Claim or Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

      1.134.  "U.S. Trustee" means the Office of the United States Trustee overseeing the administration of the Chapter 11 Case.

      1.135.  "Voting Committee" means the three (3) person committee established under the Equity Trust Agreement to provide instructions to the trustee of the Equity Trust with respect to the voting of the New Common Stock issued to or for the benefit of Servicios pursuant to the Plan.

      1.136.  "Voting Deadline" means the date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of ballots for voting to accept or reject the Plan.